```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
```

| | |
|---|---|
| | USDC SDNY |
| | DOCUMENT |
| | ELECTRONICALLY FILED |
| | DOC #: _____ |
| | DATE FILED: January 29, 2021 |

UNITED STATES OF AMERICA

                v.

                  18-CR-631 (KMW)
                  **ORDER**

JEREMY POSNER,

       Defendant.

---------------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

    On January 28, 2021 the Court received the letter from Mr. Posner dated December 21, 2020, annexed hereto as Exhibit A.

    The Court notes that Mr. Posner has been represented to date by Wachtell, Lipton, Rosen & Katz.

    Wachtell shall notify the Court by February 8, 2021 whether the Court should construe Mr. Posner's letter as a renewed motion for compassionate release.

SO ORDERED.

Dated: New York, New York
       January 29, 2021                            /s/ Kimba M. Wood
                                                    KIMBA M. WOOD
                                           United States District Judge

# EXHIBIT A

18cr631



Jeremy M. Posner
86065-054
FCI Otisville
Federal Correction Institution
PO BOX 1000
Otisville, NY 10963
December 21, 2020

Honorable Kimba M. Wood
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Dear Judge Wood,
    I am writing in the hope of giving you a better understanding of the conditions under which I am serving my term of incarceration. There seem to be some gaps between the facts here at Otisville and your conclusion that I am at low risk of being exposed to COVID-19 while incarcerated here.

    It is true that there has not yet been a COVID diagnosis among the residents

①

of my housing unit. However, this unit shares staff with every other housing unit, and it is the staff who pose the only risk of bringing COVID into the facility. It is therefore critical that every reasonable step be taken to minimize the chances for staff members to enter the facility while infected, and further reduce opportunities for them to spread the virus should they bring it in.

The first layer of that protection is missing entirely. Staff members have told us that they are not subjected to temperature checks upon entry to the facility, nor are staff being tested for COVID at all. Management is relying on nothing more than hope and luck to prevent staff members from bringing the virus in from the outside.

The second layer of protection should be to require staff to wear masks at all times. This does not happen. We regularly have members of the prison staff walking through the unit without masks. Staff regularly gather in offices without masks or social distancing.

②

After significant numbers of inmate complaints about maskless staff in the Lieutenant's office, management put a one-way mirror in place of that office's window, so inmates can no longer see inside, rather than making staff wear masks.

    I have repeatedly asked the Warden and Associate Wardens about how the inmate population is protected against the obvious risk of COVID spreading among the staff. Most of my inquiries have been ignored, with the most substantive response being "don't worry about that." In response to one such question, Acting Warden LeMaster said "I don't care if my staff don't wear masks around each other." I cannot tell whether he is oblivious to the risks, or if he would rather put inmates at risk — not to mention staff — than force staff to wear masks. Either way, management's policy decisions increase the chances of inmate exposure to COVID.

    This is not a purely theoretical

③

problem. On December 8th, a member of the commissary staff got sick with COVID. For months, many of us complained about commissary staff refusing to wear masks. While the inmates who worked at commissary were put in isolation, the commissary supervisor is still working and interacting with inmates. There was seemingly no effort to contact trace among staff who had been maskless in close quarters with the sick staff member. By Friday, December 11th, a Case Manager in another unit was sick. Many of us expect to hear about far more sick staff members by the end of the year, especially after a December 14 announcement that visits are suspended because of high COVID rates in the commuting area.

In addition to the implicit risk of COVID itself, the knowledge of the lack of thoroughness of those tasked with my safety has triggered frequent debilitating panic attacks. The emotional arc of an attack is very similar to the moment in a near-fatal

(4)

horseback riding accident I had as a teenager when immediately after falling off the horse, I realized the horse had fallen on top of me, except that instead of a fleeting moment, it can last for hours. There are times that all I can do is shake in terror, while sitting on my bed. The attacks happen daily.

    I have begged Dr. Davis (the facility's Chief Psychologist) for relief, preferably in the form of better protections from COVID, but those requests have yielded 3 sessions in 8 months, and nothing to address the underlying problem. I know that Dr. Davis has discussed my situation with the Warden, and that BOP policy says that Anxiety Disorder is supposed to be treated as a serious mental illness. I cannot help but wonder how the failure to address conditions that repeatedly subject me to panic attacks does not constitute a violation of my right not to be subjected to cruel and unusual punishment.

    In light of the basic facts about

(5)

the handling of the pandemic here, I am curious about the scientific basis of your conclusion that I am at low risk of being exposed to COVID here. It is clear that procedures fall well short of all reasonable precautions. Moreover, the inadequacy of the response is actively damaging the state of my mental health.

    My issue is not with the duration of my sentence, but with the conditions under which I am forced to serve it. The Bureau of Prisons is not equipped to handle a public health crisis of the magnitude of COVID, yet incarceration puts me in their hands. I enter each day with the fear that it may be the day that BOP's incompetence exposes me to the pathogen that might kill me. I am writing you to seek relief from that torture.

    I thank you for your consideration.

*Jeremy Posner*

(6)

Jeremy Posner
86065-054
FCI Otisville
Federal Correction Institution
PO BOX 1000
Otisville, NY 10963

WESTCHESTER NY 105
21 DEC 2020 PM 5 L



Honorable Kimba M. Wood
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

USM P3
SDNY

10007-131699

FEDERAL CORRECTIONAL INSTITUTION
OTISVILLE, NY 10963
DATE: 12-19-20
The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer enclosed correspondence for forwarding to another addressee, please return the enclosure to the address above.